Michael W. Thrall (031172)
Nathan A. Finch (031279)
**Catalyst Legal Group, PLLC**
1820 East Ray Rd.
Chandler, AZ 85225
Email: Michael@Catalyst.Lawyer
602.456.2233
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>　　Yolanda Orlena Holden,<br><br>　　　　　**Debtor.** | Case No.: 2:17-bk-12249 -MCW<br><br>AP No.:<br><br>CHAPTER 13<br><br>**COMPLAINT TO HOLD CREDITOR AN MOTORS OF SCOTTSDALE, LLC IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND FOR DAMAGES AND SANCTIONS** |
| Yolanda Orlena Holden,<br><br>　　　　Plaintiff,<br>v.<br><br>AN Motors of Scottsdale, LLC,<br><br>　　　　Defendant. | |

COMES NOW, Yolanda Orlena Holden the debtor in the above-captioned proceeding ("Debtor" or "Plaintiff"), by and through undersigned counsel, files this complaint to request this Court to enter an order finding AN Motors of Scottsdale, LLC in violation of the protections of the automatic stay under 11 U.S.C. §362(a) and award actual and punitive damages against the Defendant. In support thereof, Debtor hereby states and alleges as follows:

//

//

## JURISDICTION

1. On October 16, 2017, Debtor filed for relief under Chapter 13 of Title 11 of the United States Code ("the Bankruptcy Code").

2. AN Motors of Scottsdale, LLC dba AutoNation Collision Center ("AutoNation" or "Defendant") is a corporation incorporated in Delaware and doing business in Arizona.

3. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334 and Fed. R. Banker. P. 7001 and 7004.

4. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) and (O).

## FACTUAL BACKGROUND

5. Debtor's petition for relief was filed *Pro Se* on October 16, 2017.

6. The first meeting of creditors was held on November 29, 2017.

7. At the time the petition was filed, Defendant was in possession of Debtor's vehicle due to a dispute for fees owed for unauthorized repairs that took place in July of 2017.

8. Defendant refused to release Debtor's vehicle until Debtor paid for the balance owed in full, including payment for the unauthorized repairs.

9. On October 16, 2017, Debtor contacted Defendant and was directed to the manager, Joe Scire ("Scire") who she informed that she filed bankruptcy.

10. Defendant informed the Debtor that he needed to contact the lien holder, GM Financial because of a prior arrangement he had with them to take possession of the vehicle.

11. On October 17, 2017, Debtor contacted the lien holder, GM Financial and provided her bankruptcy information.

12. GM Financial stated they would not be repossessing the vehicle from Defendant's location and that she should contact Defendant to discuss delivery of the vehicle.

13. Debtor called Defendant and was given a number to their legal department and a number for their complaint line. Debtor left voice messages at both numbers. The calls were not returned.

14. On October 18, 2017, Debtor called Defendant several times and was directed to leave a voice mail for Scire. The calls were not returned.

15. On October 19, 2017, Debtor called Defendant and spoke with a receptionist that requested Debtor fax in her bankruptcy paperwork. Debtor complied and faxed over a notice of bankruptcy.

16. On October 20, 2017, Debtor called Defendant and spoke with an employee who confirmed the fax was received.

17. Debtor requested to speak to Scire but was told by another employee that a message would be given to him to return Debtor's call.

18. Debtor attempted to contact Defendant multiple times more the same day and was told each time she would receive a return call from Scire. The calls were not returned.

19. Upon information and belief, on or about October 23, 2017, Defendant informed GM Financial that Defendant had impounded the vehicle.

20. Defendant's actions caused GM Financial to void all warranties on vehicle debtor had paid for at the time of purchase.

21. At the time of purchase, Debtor paid about $5,810.00 for the warranties; moreover, Debtor's vehicle is unprotected from future mechanical breakdown or repairs which could cost her an unknown sum of money.

22. On October 23, 2017, Debtor called Defendant and spoke with Scire who informed her that she needs to have a lawyer send a demand letter for the vehicle and that he can longer communicate with her.

23. Debtor informed Defendant that she filed her bankruptcy *Pro Se* and requested return of the vehicle. Defendant then abruptly disconnected the call.

24. On November 1, 2017, Debtor's Counsel, Catalyst Legal Group entered a Notice of Substitution of Counsel.

25. On November 2, 2017 Debtor's Counsel called Defendant and requested the vehicle be released to Debtor. An employee informed Debtor's Counsel that a message would be given to Scire and that he would return the call. The call was not returned.

26. On November 6, 2017, Debtor's Counsel called Defendant and spoke with Scire. Debtor's Counsel reminded Scire of the bankruptcy and requested turnover of the vehicle. Scire stated he would call Debtor's Counsel back. The call was not returned.

27. On November 7, 2017, Debtor's Counsel called and left a voicemail for Scire. The call was not returned.

28. On November 8, 2017, at 11:00 A.M., Debtor's Counsel and Scire, appearing on behalf of Defendant, appeared for a hearing on Debtor's Emergency Motion to Release Property and Debtor's Emergency Motion to Extend the Automatic Stay.

29. Scire stated that he was in fact the manager for Defendant's Scottsdale Collision Center.

30. Scire admitted that he received calls from the Debtor and Debtor's Counsel informing him of the bankruptcy filing and that Defendant was aware of the bankruptcy filing.

31. Scire also admitted that Defendant received a written notice of the bankruptcy filing as well.

32. Scire, stated that he did not return Debtor's Counsel's calls on advice of his superiors at AutoNation.

33. Scire admitted Defendant did not return the vehicle after receiving notice of the bankruptcy case filing.

34. Scire stated on the record that the car was a "completed vehicle."

35. After Judge Wanslee made clear to Defendant that a "failure or refusal to make things right can subject your company to liabilities and damages" after notice of the bankruptcy, Defendant agreed to turn the vehicle over.

36. Scire and Debtor's Counsel informed the Court that they would continue to work towards a resolution of damages.

37. At approximately 3:45 P.M., Debtor appeared at Defendant's location to pick up her vehicle and met with Scire.

38. Immediately, Debtor noticed that Defendant stripped the vehicle of critical components including the trim on the on the back bumper/trunk area, trim on the driver's side door, the driver's side view mirror, and the front grill. *See exhibit A.*

39. The removal of these items rendered the vehicle unsafe to drive.

40. The vehicle did not come to the collision center with these items missing.

41. Scire informed Debtor that Defendant's attorney, Brian Davis ("Davis"), told him to remove them after the hearing that morning.

42. Debtor called her counsel and gave the phone to Scire who informed Debtor's Counsel that Davis told him to strip the vehicle after the hearing that morning.

43. Debtor then removed vehicle from Defendant's location.

44. Debtor's Counsel and Davis spoke on or about November 8th and November 9th regarding Defendant's action of stripping the vehicle.

45. Defendant's stripping of the vehicle caused Debtor financial harm and rendered Debtor's vehicle unsafe to drive.

46. Defendant's refusal to release Debtor's vehicle caused Debtor thousands of dollars in damages, including lost employment.

47. Defendant's actions of reporting the vehicle to GM Financial as impounded, which voided the vehicles warranties, has caused Debtor significant financial harm.

48. Defendant's actions have caused the Debtor a severe financial, mental, and emotional burden.

49. Debtor felt harassed and threated by Defendant's actions.

50. This caused Debtor to suffer significant anxiety and stress.

51. Defendant's actions are intentional, unlawful, and malicious violations of the automatic stay.

## COUNT I – STAY VIOLATIONS

52. The foregoing paragraphs are incorporated herein by reference.

53. 11 U.S.C. §362 operates as a stay against "all entities" prohibiting "any act to collect… or recover" from the Debtor on claims that existed prior to the commencement of the case. 11 U.S.C. §362(a)(6).

54. The Ninth Circuit Court of Appeals has held that creditors have an "unambiguous" and "affirmative duty to comply with the stay." *Sternberg v. Johnston*, 595 F.3d 937, 940 (9th Cir. 2010).

55. Defendant's conduct was intentional, which doesn't require that Defendant had the intent to violate the automatic stay, but only the intent to commit the act which in fact violated the automatic stay. *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994).

56. Defendant's conduct violated 11 U.S.C. § 362(a) after Defendant had actual knowledge of the Debtor's bankruptcy filing.

57. Actual and punitive damages should be awarded to Debtor pursuant to 11 U.S.C. § 362(k)(1), which provides, in pertinent part, that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

58. Under 11 U.S.C. § 362(k) courts should grant punitive damages "in appropriate circumstances," such as where a creditor shows reckless or callous disregard for the law or the rights of others. *In Re. Bloom*, 875 F.2d 224, 228 (9th Cir. 1989).

59. This court may also award damages as sanctions under its inherent civil contempt authority. *In re Dyer*, 322 F.3d 1178, 1189 (9th Cir. 2003).

WHEREFORE, Debtor requests a judgment finding the Defendant liable for violating the automatic stay and awarding Debtor compensatory damages, punitive damages, and costs pursuant to 11 U.S.C. § 362(k) or as sanctions for contempt of court.

## COUNT II – SANCTIONS FOR CONTINUED VIOLATIONS

60. The foregoing paragraphs are incorporated herein by reference.

61. Congress has empowered bankruptcy courts broadly to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

62. "Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Green Point Credit, LLC v. McLean (In re Mclean)*, 794 F.3d 1313 (11th Cir., 2015) *citing F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (alteration and internal quotation marks omitted) (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)), *cert. denied*, __ U.S. __, 134 S. Ct. 901 (2014) (Emphasis Added).

63. Defendant's actions to date indicate a disregard for the provisions of the federal bankruptcy laws and nothing in Defendant's communications with the Debtor or Debtor's counsel suggests an intent to refrain from future collection actions.

64. In light of the foregoing, punitive damages intended to deter future violations of the automatic stay are appropriate.

WHEREFORE, Debtor respectfully requests an order of sanctions on the Defendant in the event of future violations at no less than $1,000.00 per violation.

## COUNT III – ATTORNEY'S FEES

32. The foregoing paragraphs are incorporated herein by reference.

33. Debtor is entitled to attorney's fees under 11 U.S.C. § 362(k).

34. Pursuant to the recent *en banc* opinion of the Ninth Circuit Court of Appeals in *America's Servicing Company v. Schwartz-Tallard*, 11 U.S.C. § 362(k) allows an "award of all attorney's fees reasonably incurred to remedy a stay violation, including fees incurred in prosecuting the damages action." 803 F.3d 1095 (9th Cir. 2015). 35. This court may also award fees as sanctions under its inherent civil contempt authority. *In re Dyer, 322 F.3d 1178, 1189 (9th Cir. 2003)*.

WHEREFORE, Debtor requests an award of reasonable attorney's fees and costs pursuant to 11 U.S.C. § 362(k) or as sanctions for contempt of court.

## RELIEF REQUESTED

WHEREFORE, Debtor respectfully requests the Court enter judgment against the Defendant, as follows:

A.      A judgment in favor of Debtor and against Defendant in an amount to be proven at trial for compensatory damages;

B.      A judgment assessing punitive damages in an amount to be determined at trial;

C. An order of punitive sanctions of no less than $1,000.00 per future violation against the Defendant.

D. Sanctions against Defendant for contempt of court;

E. An award of reasonable attorney's fees and costs pursuant to 11 U.S.C. § 362(k); and

F. For such other relief and further relief as the Court deems just and proper, including but not limited to post-judgment interest as may be allowed by applicable law.

DATED this 4th day of January, 2018.

**CATALYST LEGAL GROUP**

By: /s/ Michael Thrall
Michael W. Thrall
1820 East Ray Rd.
Chandler, AZ 85225
*Attorneys for Debtor*